309-657 Mossville Land Investment, LLC, account by Jonike Nair, v. Peoria County Board, at the lease by Melinda L. Manline. Ms. Nair, you may proceed. Thank you. May it please the Court, counsel? My name is Jonike Nair. I represent Mossville Land Investments, LLC, or MLI, as we've been referring to it in the briefing. MLI is the plaintiff and appellant in this case. This case concerns the denial of two special use permits for operation of a mineral extraction facility in Peoria County. There are two pending appeals related or arising out of the same matter. Both this case and also the case pending before you is 309-0988. As the Court, as Your Honors probably recall, the denial of the special use petitions was appealed by MLI first as an administrative review case. The denial occurred on, I'm sorry, December 11th of 2008, and a couple weeks later, on December 29th of 2008, MLI filed what's been referred to as Mossville 1, or the administrative review case, requesting administrative review of these denials of special use petitions. In the subsequent months, the county, the defendant in the case, filed a motion to dismiss, arguing that the court lacked jurisdiction because the case should have been appealed pursuant to legislative review procedures rather than administrative review procedures under Section 12012.1 of the county's code, which subjected certain decisions of municipalities to legislative de novo review with a 90-day statute of limitations rather than the default, the previous default, which was administrative review of special use petitions, specifically in this case. On March 3rd of 2009, the court in Mossville 1, which is the case that is in the other case that's on review by this court, denied the county's motion to dismiss and found that for the purposes of the proceedings before the trial court, administrative review was appropriate. Now, I want to paint the picture for the court of the situation as it existed as of the trial court's decision on March 3rd of 2009. We had Section 12012.1 of the county's code, which was amended effective January 1st of 2009. Under the new 12012.1, it was clear that the decisions on appeal would have been subject to legislative review. So if the case had been filed in 2009, it would have been subject to legislative review. Or, I'm sorry, if the decisions had occurred in 2009, they would have been subject to legislative review. Now, there were only a couple of cases from the appellate courts that really interpreted 12012.1 and its companion in the municipal code at the time that the court denied the motion to dismiss for want of jurisdiction. And those both arose out of the second district appellate court and were seemingly contrary to each other. The first was actually Libertyville LLC v. Village of Libertyville, which is cited in our briefing. In that case, the second district found that all cases in which ordinances were passed were legislative. So if a county denied a special use permit through an ordinance, that rendered the decision legislative. Well, briefly after that, shortly after that, the same court in Millennium Maintenance Management Inc. v. County of Lake found that the 12012.1 of the county's code, yes, I'm sorry, the 12012.1 of the county's code applied only to decisions of a municipality approving a special use petition or granting its own variance or what have you, and not to denials. That was the basis that Millennium Maintenance Management case was the basis for the trial court's decision in Mossville 1, the administrative review case, that administrative review was proper. And that was also the basis that MLI argued and continues to believe is correct, that, again, we do continue to believe that administrative review is appropriate in this case. However, the precedent was such at the time that we felt that the only way to secure our client's right to have its say in court and be heard on the merits, both in the trial court and on appeal, was to file a second case, Mossville 2, which is what I'm here before the court today on. I'm not sure if you filed the alternative somehow. Yes, Your Honor, and that has come up a number of times. And that would be sort of the normal way that you preserve your right. We felt that we could not do that in this case because there are substantive differences with the court sitting in administrative review versus the court sitting in legislative review. The modes of service are different. Historically, the defendant parties have been different. There are different standards for review, obviously, de novo versus abuse of discretion. There are even different procedures on which a decision should be rendered, whether there should be a trial versus briefing and argument. So we felt that it would be inappropriate to file any alternative within the one case. It's a completely different animal, near as we could tell, asking the court to where its legislative versus its administrative review has. So we didn't feel that it would be appropriate to file any alternative within the existing case. For example, would we need to reissue summonses? How would they be served, by certified mail as in administrative review, or would they be serviced by the sheriff as in legislative review? Because of the differences, the fact that this is an entirely different system that had been developed legislatively, we did not feel that it was appropriate to file both causes of action, if you will, or both modes of review in one court and in one case. Now, interestingly, they were both before the same judge in the same courtroom, and for that reason, we felt that there was no real prejudice that would result to the defendant by having these two cases filed. The first thing we did substantively in the second filed case, the legislative case that's on appeal before you today, was to request a stay. All we desired to do in that case was preserve our rights. Now, I do want to point out that we filed Mossville 2 within 90 days of the decisions that were rendered by the county board, and that was to preserve our rights under the statute of limitations under 12012.1 of the county's code in case the law as it's been developed was such that we would lose our rights through administrative review at some point in the process. Now, this court has not yet decided the administrative review case. The briefing concluded at the end of last month, but frankly, this is still an open question. What could happen here, and the reason that we've sought the stay from the beginning, is if, for example, this court upholds the trial court's dismissal, and then in a few months, we come back before the third district appellate court in the administrative review case, and that court finds that there's a want of jurisdiction under administrative review. Well, now what? Now we've lost any motive review for this case, and that cannot be the result. It simply would be, we believe, a violation of due process. If it comes to that, hopefully it never will, but it would be a violation of constitutional rights, and moreover, it would be an absurd result. Maybe that's the clearest way to point this out for the court. It's simply an absurd result that we would be deprived of our right to review, when, as Justice Litton has pointed out, in your ordinary case, you would be able to plead in the alternative. You'd be able to preserve those rights. You'd be able to ride it out through to the appeal, and then find out, and you'd preserve that right on remand to pursue an alternative cause of action. Because of the bifurcation of this process into administrative versus legislative review, and how different those processes are, subject to different sections of the Code of Civil Procedure even, we should not be deprived of our right to have our day in court, especially given that we did file for both proceedings, both types of review, in a timely fashion, as regards each of those types of review. Is that enough separation to keep you from a race judicata issue? I don't believe so. A decision on the merits in one, I think, would potentially operate as a decision on the merits on the other. More importantly, I think, for our purposes, is the fact that these cases were both filed before one court, and the cases are now before this court on appeal at the same time. And so the courts at both levels of review had the opportunity to make a consistent ruling across the two cases. If in one case the court found that administrative review was proper, that would necessitate dismissal of the legislative review case, and the opposite is also true. So once there was a final decision as to the appropriate type of review, it would be a simple thing for any court to ensure that those decisions were consistent and to toss out the case that really had no further merit because a decision, a final decision on the merits had been rendered in the one. So from a race judicata standpoint, we felt that there's really no danger of an inconsistent verdict, an inconsistent decision, because these are lockstep. They're going before the same courts at the same times. And moreover, we saw the stay initially in the legislative review case, which if it had been permitted would prevent anything from happening in that case until a final decision had been rendered in the administrative review case. Now, from a procedural standpoint, the county did file a motion to dismiss on the basis that this was a duplicative action, that it was duplicative of the administrative review case. And we briefed that somewhat. There's frankly not a very well-developed body of case law on this concept of duplicative legislation, I'm sorry, duplicative filings because this is a fairly unique circumstance. As the court probably recognizes, this does not come up every day. Normally, where there is a need for an alternative pleading, one can do that alternative pleading within one case. We couldn't do that in that case, so we're in a sort of an odd position. So the nearest parallel we could find was filing cases in other jurisdictions. If there's a case in Hawaii and then somebody files in the U.S. In Illinois, sorry. So that is the case law that is discussed at some length in our briefing. And the factors that are used to consider whether an injunction or a stay of one of the two cases is appropriate, I think do advise the court in this case. And it actually goes to Justice Litton's question about res judicata as well. The questions of comedy, prevention of harassment, abuse, and vexatious litigation, prevention of concerns with res judicata or multiplicity of verdicts or what have you, these are all questions that I think come up in our case as well and that are relevant to this analysis. And one of the other elements that is highlighted in that line of case law that I think is very relevant here is the question of prejudice. Who is prejudiced and how are they prejudiced? In this case, we have MLI, the plaintiff appellant, who is clearly in a position to be prejudiced. If there are inconsistent decisions in these two cases or even barring the stay, if in fact this court determines that administrative review was not appropriate, we stand to be actually prejudiced. We will lose our day in court. We will lose our rights. On the other hand, we have the defendants, which is the Peoria County. They really aren't prejudiced at all by allowing the case to remain on the books but stayed. Because as we pointed out, there should be an ability of the courts at every level to make this consistent and to preserve the rights of Mossville land investments while not prejudicing the county board. And so we believe that the factors that are set forth, the FAFF factors, and also the other factors enunciated in the John Crane case and marriage of Gary and so on, support allowing the two cases to remain on the books while staying the legislative review case. In closing, I'd just like to point out again that what was done in this case is highly unusual. But it was, and I believe still is, the best way to preserve the rights of the parties, specifically to preserve the rights of the appellant on appeal and throughout this process. And I believe that the correct decision of the trial court would have been to deny the motion to dismiss and grant the motion to stay and to explicitly have hooked the stay of the legislative case to the outcome of the administrative review case. It would have ensured that the two decisions were consistent and that no one was deprived of rights just because of some confusion in the case law and the fact that this court and no presidential court had actually ruled upon the issues that were at play. Thank you, Your Honor. Ms. Neier. Thank you, Judge. Ms. Manline, is it? Manline. You may respond. Your Honor, my name is Melinda Manline, and I represent Peoria County and the Peoria County Board, who are the defendant's appellees in this case. The fact of the matter is, Your Honor, is that MLI has already argued Mossville won in the administrative review case and lost on the merits. With this case, they're not attempting to preserve a day in court. They're attempting to preserve a month in court. As the Supreme Court stated in Kellerman v. MCI Telecommunications Corporation, Section 2-619A3 of the Code of Civil Procedure is designed to avoid duplicative litigation and should be applied to carry out that purpose. That is exactly what the trial court did in this case, and that's why it did not abuse its discretion in dismissing Mossville 2. As MLI presented, the normal factors, the FAF factors that are considered in these types of 2-619A3 cases do not really apply to this case because those factors were developed to determine when it's appropriate to enjoin actions in foreign jurisdictions. And, of course, Mossville 1 and Mossville 2 both were filed in the same circuit court and heard before the same judge, so there is no foreign jurisdiction involved. So these factors and this heightened scrutiny that are applied in the FAF case really don't apply to this case. The more appropriate standard, as presented by MLI in its brief, was addressed in the case of interim marriage of Gary. In that case, the court held that for a litigant to enjoin a later filed case in Illinois, there are only two things that needed to be shown, and I quote, either the parties and legal issues involved are the same or the issues involved in the later filed action are the type that can and ordinarily should be disposed of in the course of the original action and there does not appear to be any proper purpose for the maintenance of the later filed action. With these cases, the parties and the issues involved in both Mossville 1 and Mossville 2 are exactly the same and the issue of whether the county board's decision denying plaintiff's special use petitions can and ordinarily should be disposed of in the course of Mossville 1. More importantly, MLI's purpose in maintaining Mossville 2 is not proper and it does result in prejudice to the defendants. In Mossville 1, MLI argued that the board's decision was subject to administrative review and it won that argument and yet, three days later, it filed Mossville 2, still maintaining, in fact, to this day, still maintaining that administrative review is the appropriate course of action. Do you think that they could have put it in the alternative? Yes, Your Honor, I do think they could have put it in the alternative. Some of the problems that Ms. Nair mentioned, the service of process, which method to use, I think that personal service would obviously suffice in both instances. It would certainly serve the same purpose as certified mail service of process and, in fact, both cases involve the same defendants, really, so there's no issue there either. It's quite common to have cases with multiple and differing counts. For instance, you could have a case where one count alleges a violation of the U.S. Constitution, one count alleges a violation of the state constitution, and one count alleges medical malpractice. To support the medical malpractice claim, you have to file an affidavit, which isn't required for the other counts. Obviously, some of those counts are subject to state law, some are subject to federal law. There are different standards of review, different factors that need to be met for each different count. So I think that the court could have said they could have pled one case with two alternative counts. And as I was also saying, the purpose isn't really proper, because what they're essentially doing by filing this case that they claim the court doesn't have jurisdiction to hear is circumventing the statute of limitations and the doctrine of judicial estoppel. As the trial court correctly noted, if Mossville, too, were allowed to stay on the books, but their motion to stay was denied and they had to actually argue it on the merits, they would be judicially stopped from presenting an argument contrary to their earlier successful argument, of which they obtained the benefit of receiving their chosen form of review. That is, they filed a case that the only way it could proceed would be to be stayed, because they could not actually argue it on the merits since they maintained that the court didn't have jurisdiction to hear it. If the plaintiff, based on its own argument, cannot prosecute its case within the applicable statute of limitations, then it's not proper for the plaintiff to bring that case. Or, if the plaintiff does bring the case, then it should be held to its argument of what the jurisdiction is, it should be held to the statute of limitations, and that case should be properly dismissed, as it was in Mossville, too. As the trial court also correctly noted, maintaining a duplicative case like this one, where the plaintiff cannot proceed on the merits of the case, sets a very bad precedent, a prejudicial precedent to the defendants in this case. The 90-day statute of limitations set forth in Section 5-12000.1 of the county's code is there for a reason. It's there to protect government functions from being unduly burdened by litigation. If the plaintiff is allowed to circumvent that statute of limitations, obviously the defendant will be prejudiced by losing the protection of the statute of limitations, and it will be prejudiced by losing the protection of the doctrine of judicial estoppel. If plaintiffs are allowed to just file cases that they maintain, the court cannot hear but say, oh, no, no, we won't proceed with them yet. We'll only proceed with them if the law changes in the future. I'm sorry, if the law doesn't support their case at the time of the filing of the statute of limitations, then they shouldn't be able to bring their case. That's how the law works. Finally, there's absolutely no possibility of a constitutional violation in this case. As MLI presented in its reply brief, the only possible constitutional violation that would occur in this case would be if there was a future action affecting a possible future right created by a possible future law. The fact of the matter is that there can be no constitutional violation now or in the future because MLI has already argued Mossville 1 on the merits. It has had its day in court. And that is why the trial court did not abuse its discretion in this case and why we are asking that MLI's appeal be denied and that the trial court's ruling dismissing Mossville 2 be upheld. Thank you, Your Honors. Thank you, Ms. Manlein. Ms. Neier, you may reply. Well, first off, Ms. Manlein has addressed this question of pleading in the alternative, and I believe that I've made our position fairly clear about that. We do not believe that it would have been appropriate to plead in the alternative. Given the fact that these are entirely different modes of review, they're a different hat for the trial court we've been wearing, and I think that that is fairly clear under the Code of Civil Procedure. Second, Ms. Manlein raised the case in remarriage of Gary to question whether we had a proper purpose in filing Mossville 2. I think that all of my argument today has really highlighted exactly what our purpose was, and I don't think it would ever be improper to file a second case to attempt to preserve your rights and preserve your rights to a day in court. And I guess the question that Ms. Manlein finally has raised is, what is one's day in court? Does a day in court just mean that you get to go before the trial court? Well, that's part of it. But I think another part of a day in court is coming before this court and having a right to appeal. That is part of our constitutional protections, and it is part of our day in court. And therefore, we believe that the question as to whether or not we'd get a day in court is still open to question. And in the event that the administrative review case were dismissed on jurisdictional grounds by this court and the trial court's decision in this case was upheld dismissing the case, we would be in fact deprived of having this case reviewed on the merits by an appellate court. And that simply cannot be the reasonable and rational result under the law. And unless the court has any questions, that's all I have. I don't believe we have. Thank you. Thank you very much. Thank you, counsel, for your arguments in this matter this afternoon. It will be taken under advisement. A written disposition shall issue.